```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
           STATESVILLE DIVISION
              5:06CV42-02-V
             (5:03CR46-1-V)
```

| | | |
|---|---|---|
| **AMANDA J. DURHAM,** | ) | |
| | ) | |
|     **Petitioner,** | ) | |
| | ) | |
|        v. | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
|     **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before this Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, filed March 17, 2006 (document # 1); and on the Government's Motion to Dismiss, filed June 13, 2006 (document # 7). For the reasons stated herein, and for the further reasons stated in the Government's Motion to Dismiss, Petitioner's Motion to Vacate will be <u>dismissed</u>.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The underlying criminal record reflects that on October 21, 2003, Petitioner was arrested on a Complaint which charged her with various violations of federal law. (Case No. 5:03CR46-V, document # 3). On October 28, 2003, an original Bill of Indictment was filed charging Petitioner and two other persons with one count of engaging in a drug conspiracy involving powder cocaine, cocaine base and methamphetamine, in violation of 21 U.S.C. §§

841 and 846, with three counts of possessing those narcotics with intent to distribute them and aiding and abetting those offenses, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and with one count of using and carrying a firearm during and in relation to their drug trafficking crimes, in violation of 18 U.S.C. §§ 2.[1] (Case No. 5:03CR46-V, document # 15).

Also on October 28, 2003, the Government filed an Information pursuant to 21 U.S.C. § 851. Such Information asserted that Petitioner previously had sustained a felony drug conviction, thereby signifying that were she to be convicted of either of the drug charges which she was facing, she would have been subject to an enhanced sentence. (Case No. 5:03CR46-V, document # 16).

Although Petitioner initially was released on bond pending the resolution of her charges, on January 9, 2004, the Probation Office filed a Violation Report seeking the revocation of said bond because Petitioner admittedly had used cocaine and had absconded from supervision. (See Case No. 5:03CR46-V, document ## 9 and 31, respectively). During a hearing on those matters, Petitioner did not oppose the Report; therefore, the Court revoked her bond. (Case No. 5:03CR45-V, document # 36: Order of Detention).

Thereafter, on July 2, 2004, Petitioner's first attorney

---

[1] Because Petitioner subsequently was charged in and pled guilty under a Superceding Bill of Indictment, the details of her charges will be set forth in connection with that second Indictment.

2

moved to withdraw from her case on the ground that conflicts had arisen between him and Petitioner leading him to believe that it was in her best interest for him to withdraw. (Case No. 5:03-CR45-V, document # 49). On July 12, 2004, the Court granted that motion, and replacement counsel, R. Locke Bell, was appointed on the following day. (Case No. 5:03-CR45-V, document ## 50 and 51).

On August 3, 2004, Petitioner and replacement counsel filed a Plea Agreement in which she agreed to plead guilty to the conspiracy and the firearm charges set forth in Counts One and Five. (Case No. 5:03-CR45-V, document # 55). Pursuant to that Agreement, the parties' acknowledged that Petitioner's guilty pleas exposed her to a statutory term of no less than 20 years up to life imprisonment on the conspiracy charge, and to a consecutive statutory minimum term of five years imprisonment on the firearm charge.

The Agreement also reflects the parties' stipulations that Petitioner could be held accountable for in excess of 500 grams but less than 1.5 kilograms of methamphetamine; and that the corresponding offense level for the drug charge was 32, exclusive of any reductions for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1. (Id.). In addition, however, the Agreement sets forth Petitioner's acknowledgment that if the Probation Officer determined that her criminal history warranted career offender status or the application of the statutory man-

datory minimum terms, that determination would control the calculation of Petitioner's sentence. (Id.).

The Agreement also contains Petitioner's waiver of all rights which she may have had pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004); and it reflects her agreements to be sentenced under the Guidelines, to have her sentence determined by the sentencing judge, and to allow the judge to impose a sentence up to the statutory maximum term, as supported by the facts, under a preponderance of the evidence standard. (Id.). Similarly, the Agreement sets forth Petitioner's waiver of her right to contest her conviction and/or sentence on any grounds except ineffective assistance of counsel; prosecutorial misconduct; or on the ground that her sentence was based upon Guidelines findings which were inconsistent with explicit stipulations set forth in that Agreement. (Id.). Last, the Agreement contains Petitioner's stipulations that there were factual bases to support her guilty pleas to Counts One and Five of the Indictment; and that the Court could use the offense conduct set forth in her Pre-Sentence Report to establish those factual bases. (Id.).

On August 24, 2004, a Superseding Bill of Indictment was filed. This second Indictment charges that Petitioner and her two co-defendants conspired to possess with intent to distribute five kilograms or more of cocaine powder, 50 grams or more of

4

cocaine base, and 500 grams or more of a mixture of containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 (Count One); that Petitioner and her co-defendants possessed with intent to distribute unspecified quantities of cocaine powder and a mixture of methamphetamine, and aided and abetted one another in that offense, all in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count Two); that the three possessed with intent to distribute 50 grams of a mixture containing methamphetamine, and aided and abetted one another in that offense, in violation of 21 U.S.C. § 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count Three); that the three possessed with intent to distribute 500 grams of mixtures containing a detectable amount of methamphetamine, and aided and abetted one another in those offenses, in violation of 21 U.S.C. § 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count Four); that the three used and carried a firearm during and in relation to their conspiracy offense, and aided and abetted one another in that offense, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Five); and that one of the co-defendants, an illegal alien, unlawfully possessed a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(5)(A) (Case No. 5:03CR46-V, document # 59).

The Government also subsequently filed an amendment Information pursuant to 21 U.S.C. § 851 modifying the original notice to allege that Petitioner had sustained her felony drug conviction

5

ten years earlier than was alleged in the original Information. (Case No. 5:03CR46-V, document # 60).

Also on August 24, 2004, Petitioner appeared before the Court for a Plea and Rule 11 Hearing during which she entered her guilty pleas to Counts One and Five from the original Bill of Indictment. However, out of an abundance of caution, on September 2, 2004, the Court conducted a second Plea and Rule 11 Hearing in order to accept Petitioner's guilty pleas to Counts One and Five as they were alleged in the Superseding Bill of Indictment.

On that occasion, the Court again placed Petitioner under oath and engaged her in its standard, lengthy colloquy to ensure that her guilty pleas were being intelligently and voluntarily tendered. At the outset of that proceeding, Petitioner reiterated that her mind was clear and she understood that she had come to Court to enter guilty pleas to the conspiracy and firearm charges; that she understood she was required to give truthful answers to the Court's questions; and that she wanted the Court to accept her pleas. (Plea Tr. 4-5).

Again in response to the Court's numerous questions, Petitioner gave answers which established that she was not under the influence of any alcohol, medicines or other drugs; that she had received a copy of the Indictment and had reviewed it with her attorney; that she fully understood the charges and their corre-

sponding penalties; that she had taken enough time to discuss possible defenses with counsel; and that she understood that she had the right to plead "not guilty" and proceed to trial. (Plea Tr. 5-10, 16-17). Additionally, Petitioner acknowledged her consent to the terms of her Plea Agreement as they had been explained in Court, including the drug quantity and offense level stipulations. (Plea Tr. 10-14). Petitioner also swore that she understood the rights she was relinquishing by pleading guilty, the appellate waiver from her Agreement, and how the Sentencing Guidelines might be applied in her case. (Plea Tr. 8, 15-16).

Petitioner also swore that no one had threatened or coerced her into pleading guilty, and no one had made her any promises of leniency in order to induce her plea; that she was satisfied with the services of her attorney and did not wish to make any comment to the Court; that she fully understood her plea proceeding; and that she was tendering a guilty plea because she, in fact, was guilty of the subject charge. (Plea Tr. 16-17). Accordingly, after reviewing Petitioner's answers to its questions, the Court determined that her guilty plea was knowingly and freely made, and so the Court accepted that plea. (Plea Tr. 18). Thereafter, Petitioner signed the Entry and Acceptance of Guilty Plea form, thereby memorializing the foregoing oral representations. (Case No. 5:03CV46, document # 64).

On October 20, 2004, the Court conducted an inquiry into the

status of counsel proceeding due to a letter which Petitioner had written complaining about her lack of communication with counsel and an unrelated problem which she experienced with the county jail at which she was housed. During that proceeding, Petitioner told the Court that counsel had not believed either her version of the offense conduct or her psychological motivations for that offense, and had failed to speak with persons whom she believed could substantiate her story. However, counsel explained that Petitioner's reported desire to have her co-defendants's drug deals discovered and punished essentially was irrelevant since she admitted that she freely had engaged in the crimes.

In response, the Court concurred with counsel's position that his obligation was to understand the facts and candidly to explain how Petitioner's version of the facts compared with the Government's evidence. (Inq. to Cnsl. Tr. 7, filed December 22, 2005). Thereafter, Petitioner agreed with the Court's assessment that she and counsel had "worked fairly well together and [had] gotten a lot accomplished." (Inq. to Cnsl. Tr. 11). Ultimately, defense counsel told the Court that he was willing to contact the persons who Petitioner identified, Petitioner indicated that she would listen to counsel's advice, and so the Court determined that the two could continue to work together on Petitioner's case. (Inq. to Cnsl. Tr. 13).

On February 7, 2005, the Government filed a Motion for a

Downward Departure pursuant to both Sentencing Guidelines § 5K1.1 and 18 U.S.C. § 3553(e). (Case 5:03CR46, document # 78). Such Motion reports that Petitioner's guilty pleas exposed her to statutory mandatory minimum terms of 240 months on the conspiracy conviction and 60 months consecutive on the firearm conviction, nevertheless, she had earned a downward departure motion by providing substantial assistance to the Government. (Id.). Thus, the Motion asked the Court to depart downward and sentence Petitioner to 120 months on Count One and 24 months on Count Five. (Id.)

On February 7, 2005, the Court held Petitioner's Factual Basis and Sentencing Hearing. At the outset of that Hearing, Petitioner reaffirmed the sworn answers which she had given during her Plea and Rule 11 Proceeding, namely that she understood the nature of the charges to which she had pled guilty along with their penalties; that she, in fact, was guilty of the subject charges; and that she had freely and voluntarily entered her guilty pleas. (Sent'g. Tr. 2-3).

Equally critically, when asked whether she believed she suitably had been represented by counsel, Petitioner indicated that although they had experienced "problems" she conceded that she was guilty; **and she had no questions about the suitability of his representation**. (Sent'g. Tr. 2-3). Consequently, the Court unconditionally accepted Petitioner's guilty pleas, found there

9

was a factual basis to support her pleas, and adjudged her guilty. (Sent'g. Tr. 3).

Next, Petitioner clarified that an arrest warrant which was listed in her Pre-Sentence Report actually had been served upon her; and that the State of North Carolina had chosen to dismiss the charge. Thereafter, the Court adopted the calculations in the Pre-Sentence Report and concluded that Petitioner's Total Offense Level was 29, her Criminal History Category was I, and the 87-108-month Guidelines term on the conspiracy conviction was overridden by the statutory mandatory minimum term of 240 months on Count One plus 60 months, consecutive on Count Five. (Sent'g. Tr. 7).

The Court next entertained the Government's Downward Departure Motion for a total sentence of 144 months based upon her assistance with its prosecution of her co-defendants. (Sent'g. Tr. 8-9). In response, however, defense counsel requested a greater departure down to a 60-month sentence on Count One and a 24-month sentence on Count Five on the grounds that Petitioner also had assisted the State of North Carolina and the District of South Carolina in their prosecutions of unrelated cases. (Sent'g. Tr. 9-11). Counsel and Petitioner also gave the Court background information concerning her previous experiences in the Witness Protection Program, how she reportedly had become involved with the instant offense in order to cause her co-defendants to be

10

exposed and apprehended by authorities, and how she had begun cooperating immediately upon her arrest.   (Sent'g. Tr. 12-18).

Although counsel for the Government clarified that Petitioner was heavily involved in the conspiracy's distribution of drugs and even had traded drugs for a gun, the Court departed below the requested 144-month term down to the 84-month sentence for which defense counsel had argued, thereby imposing a sentence which was comparable to Petitioner's Guidelines sentencing. (Sent'g Tr. 19).  The Court's Judgment was filed on March 17, 2005. (Case No. 5:03CR46, document # 79).

Petitioner did not directly appeal her convictions or sentences.  Instead, on March 17, 2006, Petitioner filed the instant Motion to Vacate arguing that her former attorney was ineffective because he: (1) failed to investigate three alibi witnesses and present their statements in support of her version of the facts; (2) failed to have her character witnesses present "for Judge Voorhees to review"; (3)failed to investigate and present her medical health records for the Court's review; (4) failed to investigate and present statements from Floyd Nickles, a "hostile witness"; (5) failed to "listen to [her] version of the truth"; (6) failed to "request time for a proper investigation of issues that [Petitioner] wanted him to bring to the Judge's attention at sentencing [and] failed to show [her] Exhibit 5"; (7) lacked "devotion to [her] case"; (8) failed to appear at the trial of

11

her co-defendant or to secure a copy of the transcript of her testimony in that proceeding so that he could have given the Court more details about her cooperation, and did not report the full extent of that cooperation in any event; (9) failed to get statements from two of the investigating agents who were familiar with her cooperation in the instant case; (10) failed to secure a continuance for her case; (11) gave an "inaccurate summation at sentencing . . . due to his ineffectiveness and disbelief of the events as to how they actually occurred between [Petitioner] and [her] co-defendant"; (12) twice deceived the Court by taking credit for matters which he had not accomplished; (13) failed to review tape-recorded evidence which would have proven that she was aware that she was selling drugs to an informant; (14) failed to notify the Court and denied that they were having difficulties in their interactions; (15) ignored her request that he do his best to secure a five-year sentence for her; and (16) failed to advise the Court of the full extent of her abuse, how she was extremely afraid of guns, and how she prevented police from being shot by her co-defendant.

    On June 13, 2006, the Government responded with a Motion to Dismiss Petitioner's Motion to Vacate asserting that Petitioner had failed to sign her Motion under penalty of perjury as required by Rule 2 of the Rules Governing Section 2255 Proceedings. The Government's Motion also asserts, in any event, that

Petitioner's claims of ineffective assistance of counsel are factually and/or legally baseless.

For its own part, the Court carefully has reviewed the pleadings and the record underlying those Motions. Based upon that review, the Court has determined that Petitioner is not entitled to any relief on her allegations against her former counsel.

## II. **ANALYSIS**

### **Petitioner's allegations of ineffectiveness are defeated by her failure to show, or even to suggest that, but for the alleged ineffectiveness, she would have proceeded to trial on the charges she was facing**.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977). Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.

More critically, inasmuch as this Petitioner has alleged ineffective assistance of counsel following the entry of her guilty pleas, she has a more focused burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described the petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297. Critically, however, if a petitioner fails to meet her burden of demonstrating prejudice, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697, citing Strickland, 466 U.S. at 697.

The "central inquiry," then, is whether, but for counsel's alleged errors, Petitioner would have insisted on a trial. Slavek v. Kinkle, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for the alleged errors, he would have insisted on a trial or entered a different guilty plea). Courts have stated that this inquiry is

14

an "objective one" based on whether going to trial might "reasonably have resulted in a different outcome." Martin v. United States, 395 F. Supp. 2d 326, 329 (D. S.C. 2005). See also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burkett v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

In the present case, Petitioner's Motion to Vacate did not even bother to assert that, but for counsel's alleged ineffectiveness, she would have insisted upon pleading "not guilty" and going to trial. In fact, the Government's Motion to Dismiss expressly pointed out Petitioner's omission of this critical assertion and the resulting consequences, yet Petitioner still did not bother to make this assertion in her Response to the Government's Motion to Dismiss. As such, Petitioner's Motion to Vacate is doomed by this omission, notwithstanding any of the Motion's other problems.

Turning to those other problems, even if the Court were to overlook this omission, Petitioner cannot objectively establish that there is a reasonable probability that she would have obtained better results had she proceeded to trial. To be sure, it has not escaped the Court's attention that in addition to the charges to which Petitioner pled guilty, she was facing three

15

other drug trafficking charges, two of which exposed her to 20-year statutory mandatory minimum terms.  Inasmuch as Petitioner has not denied her guilt for any of the offenses with which she was charged, the Court concludes that had she proceeded to trial on them, she would have been convicted of all of the charges. Moreover, those five convictions would have exposed Petitioner to a higher offense level under the grouping provisions set forth in Chapter 3 of the Sentencing Guidelines.  Under those circumstances, then, Petitioner would not have had a chance at receiving the 84-month sentence which ultimately was imposed.

Second, even if the Court were to limit its consideration to Counts One and Five, had Petitioner gone to trial and sustained convictions for those matters, she would have been precluded from receiving either the three-level reduction for acceptance of responsibility or the reduction for substantial assistance.  In that case, Petitioner simply would have received the 300-month sentence as required under the law. Obviously, there is no comparison between that 300-month term and the 84-month sentence which Petitioner actually received.

Third, even if Petitioner had pled guilty pursuant to her Plea Agreement but counsel had not vigorously contested the Government's requested departure, she still would have received the significantly higher 144-month sentence.  That is, Petitioner's cooperation prompted the Government to request the 144-month

16

term for Petitioner. However, defense counsel convinced the Court to reduce that term by 60 months more than the Government had requested. Thus, counsel's assistance cannot be deemed deficient in any case.

Last, the record of this matter reflects that Petitioner was permitted to speak at length about her involvement in the subject offenses and the factors which led to her apprehension. Ironically, however, Petitioner now fails to offer any material information which could have added to the matters which she and counsel already had revealed during her Inquiry into Status of Counsel Hearing and her Sentencing Hearing. On the other hand, the offense conduct described in Petitioner's Pre-Sentence Report -- to which she does not object -- indicates that she participated in multiple transactions involving hundreds of grams of methamphetamine and more than 100 grams of cocaine. Thus, in light of those matters, this Court is well satisfied that Petitioner simply could not have presented any additional information to support more than the 216-month reduction which she received. In short, Petitioner's assertion that counsel somehow could have presented enough information that this Court would have allowed her to "walk[] out of the courtroom with [her] family and return [] home where [she] belong[s]" simply is fantastic and entirely erroneous. Therefore, pursuant to the relevant legal principles, Petitioner cannot demonstrate an entitlement to relief on

any of her allegations against her former attorney.

### III. CONCLUSION

Petitioner has failed to establish an entitlement to relief on her allegations that her former attorney rendered ineffective assistance of counsel. Therefore, the Government's Motion to Dismiss should be <u>granted</u> and her Motion to Vacate should be <u>dismissed</u>.

### V. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the Government's Motion to Dismiss (document # 7) is **GRANTED;** and

2. That Petitioner's Motion to Vacate is **DISMISSED.**

**SO ORDERED.**

Signed: February 6, 2009

Richard L. Voorhees
United States District Judge